# United States District Court

__NORTHERN__ DISTRICT OF __TEXAS__

```
FILED
AUG 28 2014
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
By _____
        Deputy
```

UNITED STATES OF AMERICA

V.                                                          **COMPLAINT**

MYREON DAE'MONE EVANS (1)                       CASE NUMBER: 3-14-MJ- 612-BN
KENNARD DEWYANE MCGUINNIE (2)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about August 27, 2014, in the Dallas Division of the Northern District of Texas, defendant(s) did,

> knowingly and unlawfully engaging in the business of importing, manufacturing or dealing in firearms without a federal firearms license,

in violation of Title __18__, United States Code, Section(s) __922(a)(1)(A) and 2__.

I further state that I am a(n) __Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF)__ and that this complaint is based on the following facts:

> See attached Affidavit of Special Agent Selwyn DeLoach, (ATF) which is incorporated and made a part hereof by reference.

Continued on the attached sheet and made a part hereof:    XX Yes    No

_____
Signature of Complainant
SELWYN DELOACH
Special Agent, (ATF)

Sworn to before me and subscribed in my presence, on this 28th day of August, 2014, at Dallas, Texas.

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE
Name & Title of Judicial Officer                    Signature of Judicial Officer

## AFFIDAVIT

I, Selwyn DeLoach, having been duly sworn do depose and state the following:

I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) and have been so employed since December 2013. I am a graduate of the Criminal Investigator Training Program at the Federal Law Enforcement Training Center at Glynco, Georgia. I have received additional law enforcement training from the South Carolina Criminal Justice Academy and South Carolina Fire Academy. Previously, I held law enforcement positions at the Aiken County Sheriff's Office (Vice Investigator, Explosives Investigation, Narcotics Interdiction, Public Relations/ Community Policing Liaison, Explosives K-9 Handler and SWAT Operator) and the Aiken Department of Public Safety (Fire Prevention, Suppression and Inspections and Environmental Control Officer) in Columbia, South Carolina. As an ATF special agent, I am currently assigned to the ATF Dallas Group VII (Firearms Trafficking) to investigate violations of federal firearms laws.

As a result of my training and experience as an ATF Special Agent, I am familiar with federal criminal laws and know that it is a violation of 18 U.S.C. § 922(a)(1)(A) for any person to engage in the business of importing, manufacturing, or dealing in firearms without a federal firearms license. As set forth in this affidavit, I believe there is probable cause to believe that Myreon **EVANS** and Kennard **MCGUINNIE** have committed violations of 18 U.S.C. §§ 922(a)(1)(A) and 2. The information in this affidavit is based on my personal knowledge and information provided to me by other law enforcement officers and others, considered to be credible persons. Because this affidavit is provided for the limited purpose of establishing probable cause, the information contained herein is not a complete statement of all the facts related to this case. I have set forth only those facts that I believe are necessary to establish probable cause that Myreon Evans and Kennard McGuinnie have committed violations of 18 U.S.C. § 922(a)(1)(A), in the Northern District of Texas.

## PROBABLE CAUSE

On August 19, 2014, I and ATF Special Agent Jennifer McCarty received information from HSI Special Agent Antonio Jasso that he had a confidential informant (CI), who had been contacted by an individual later identified as Myreon Dae'mone **EVANS**, known to the CI only as "Tommy." **EVANS** will be referred to as "Tommy" through this affidavit. According to the CI, **EVANS** had indicated to the CI that he was selling hand grenades, military grade assault rifles and other firearms. Because the information related to firearms, SA Jasso deemed it appropriate to forward this information to us at ATF. I opened an investigation.

On the same date, we interviewed the CI at HSI's office. The CI reported that an individual who identified himself as "Tommy" had contacted him/her several times from three different phone numbers. In each call, "Tommy" stated that he was in the business of selling guns and grenades and that he wanted to meet the CI to discuss setting up future transactions. The CI told us that he was introduced to "Tommy" through an individual he knew as "Daniel."

The CI also told us that in his calls with "Tommy," "Tommy" stated that he had 10 hand grenades that he would trade for an ounce of cocaine per grenade, or he would sell them for $1000 per grenade and could negotiate for the guns. Tommy stated that he wanted to make it happen soon and that they needed to meet.

In response, the CI indicated that he told "Tommy" that one gun "wasn't much" and "Tommy" responded by saying he could get whatever the CI wanted - from 9mm to .380 handguns to rifles. When the CI asked "Tommy" to send him/her a picture of the grenades, so that he/she could verify they were real, "Tommy" responded, "he wasn't sending no picture because the police could get it off the phone records." The CI told "Tommy" that he/she would be in touch for a future meet.

Per SA Jasso, the conversations between the CI and "Tommy" had been recorded. I listened to the calls. Per the recordings, the following discussions occurred between the CI, "Tommy," and "Daniel," on the following dates:

Recorded Calls

August 13, 2014
The CI made contact via a recorded phone call with "Daniel" in reference to a previous conversation in which "Daniel" told CI that his friend could hook him up with guns. CI told "Daniel" that he/she and a friend were going to Mexico in a couple of weeks and that they needed guns. "Daniel" stated that yeah his friend could get CI guns and that he would call his friend ("Tommy") to find out what kind of guns his friend has and that they would call CI back.

August 14, 2014
"Daniel" left a message for CI stating that "Tommy" had several guns to sell. CI returned the message with a recorded phone call to "Daniel" who stated that "Tommy" had 9mm, .380's and an AK-47 for sale. "Daniel" stated I think he only has one .380 left right now. "Daniel" stated I'll call you back with his number and you can talk to him.

CI received a phone call from "Tommy" in which "Tommy" asked "who is this and what you looking for?" The CI responded by saying that he needs some guns cause he's going to Mexico with some friends. "Tommy" asked where you want to meet at and the CI replied I can meet you tommorrow. "Tommy" replied ok, call me tommorrow when you ready. The CI asked what's your name and the individual replied with "Tommy" and then said looking forward to doing business.

August 18, 2014
The CI made a recorded call to "Tommy" and asked how much you want for the grenades? "Tommy" stated I got 10 and I want an "O" of coke (referring to an ounce of cocaine) per grenade. CI stated I'll call you tommorrow to meet and "Tommy" replied ok, I'll wait on you.

August 19, 2014
The CI made a controlled recorded phone call to "Tommy" to set up a meeting to discuss the sale of the grenades and rifle. "Tommy" stated that he was good to meet and wanted to meet at the Jack In The Box near Interstate 35 and Camp Wisdom Road (Dallas, Texas) around 1pm on August 19th, 2014. CI agreed and ended the phone conversation.

The meetings/sales

On August 19, 2014, CI met with "Tommy" at the Jack In The Box as planned. The CI had been outfitted with audio recording equipment. During the meeting, "Tommy" asked the CI what he/she was looking for. When the CI stated he/she was looking for rifles and automatics to send "down south" (to Mexico), "Tommy" replied, "I got an automatic right now... I got a couple of .380's and a MAC (referring to a machine gun)." With respect to the grenades, "Tommy" then stated that he would reduce the price to $200 per grenade, if he was paid in cash. "Tommy" explained that he gets shipments each week. Because he has someone who goes out and gets the guns for him, he told the CI that he preferred to go week by week. "Tommy" further stated that he has "guys that go out and get them (guns) by stealing, breaking into pawn shops, and do whatever to get them." "Tommy" then stated, "don't worry, they won't trace back to you." "Tommy" then asked the CI what his price range was and indicated that he could get the grenades and MAC the next day. "Tommy" stated, "I will order it then, cause I gotta go and let them know what you want, you know how it goes." "Tommy" stated to the CI that "I got a brother in the penetentiary right now for doing the same, dealing in guns, so are you good to go?" "Tommy also stated "that the gun business is popping. I can get you guns, I'm trying to sell this one gun right now that I can't find nobody who wants it. It is a limited edition gun that holds thirteen (13), it's fresh out the box, no dings, semi-automatic, and I already got the serial code number off of it, so it'll never come back to us." The CI arranged for the

purchase to occur to the following day, on August 20, 2014 at the same Jack In The Box.

On August 19, 2014, "Tommy" called and left a message with CI indicated that he could not sell the MAC on August 20, 2014, as planned. The CI placed a recorded call back to "Tommy," who stated explained that he did not have the MAC right now, but he was ready to "let the pistol go." "Tommy" stated that the guy "over him" said that he had to get the first deal done with the CI. "Tommy" then stated, "this is the guy over me… I have to go by his directions."

On August 20, 2014, "Tommy" texted to the CI a picture with several machine gun-pistols. "Tommy" then called and stated, "that's what I can get in a shipment. I can't sell that today, but I got the pistol to sell you."

On August 20, 2014, the CI met with "Tommy" and "Daniel" at the Jack In The Box. "Tommy" sold the CI a Bryco Arms, Jennings T-380 .380 caliber pistol, bearing serial number 1430341 for $500. "Tommy" stated he couldn't get the grenades for this deal. "Tommy" then stated "just let me know and I got you all day. When I break into my next pawn shop, I'll give you all 40 of the guns for $5,000, you just got to bear with me man, bear with me… I'll work with you."

On August 25, 2014, the CI again met with "Tommy" at the Jack In The Box. "Tommy" arranged for the sale of a firearm with an additional unidentified third party. At this meeting, "Tommy" sold the CI a Haskell, Hi-Point, Model JHP, .45ACP caliber pistol for $700.

On August 27, 2014, the CI again met with "Tommy" and "Daniel" at the Jack In The Box. "Tommy" arranged for the sale of a firearm with a third party to the CI. At this meeting, "Tommy" sold the CI a Smith & Wesson, .38 Special Revolver, bearing serial number ANN 8014 for $300. Immediately after the sale, ATF Agents with the assistance of HSI and the Dallas Police Department detained "Tommy" and "Daniel." "Tommy" was identified as Myreon Dae'Mone **EVANS**. "Daniel" was identified as Kennard Dewyane **McGUINNIE**.

Interviews

On August 27, 2014, I and SA Jennifer McCarty interviewed **EVANS** (alias of "Tommy") at the Dallas Police Substation – Southcentral. **EVANS** was verbally *Mirandized* then he read and signed a written *Miranda* form. **EVANS** waived his rights and agreed to speak with us.

**EVANS** discussed his dealings with the CI and the firearms' sales, and told us that he obtained the firearms from multiple individuals with the intent to resell them to

others at higher prices to make a profit. He admitted that in those situations where he could not afford to buy the firearm and resell it, he would broker a deal between the firearm possessor and purchasee for a fee. **EVANS** explained that he is unemployed and uses the money earned in his illegal firearms' dealing to support himself. **EVANS** stated that he did not have a personal collection of guns or any personal use guns. He stated that he was solely buying and selling firearms to make a profit. **EVANS** admitted that some of the guns he sold were stolen. When questioned about grenades, **EVANS** claimed that he was just trying to "bump" the CI into continuing to do business with his and bring money. **EVANS** admitted that depending on how much money the CI had, they (his crew) were going to rob him. **EVANS** later requested to speak to an attorney at which time we concluded the interview.

On August 27, 2014, AFT SA Nathan Garber and SA Cody Sorrells interviewed **McGUINNIE** (alias of "Daniel") at Dallas Police Substation – Southcentral. **McGUINNIE** was verbally *Mirandized* then read and signed a written *Miranda* form. He waived his rights and agreed to the interview. **McGUINNIE** stated that he introduced the CI to **EVANS** to make firearms' purchases and that **EVANS** was the actual broker of deals. **McGUINNIE** stated that he let **EVANS** use his phone to set-up deals and contact buyers, and that he received $50 from the first firearms purchase with the CI. **McGUINNIE** stated that **EVANS** kept the remaining profit from the firearms purchase. **McGUINNIE** stated that he was present for the first and third firearms purchases, but that he was not present for the second firearms purchase. **McGUINNIE** stated he was aware of **EVANS's** business operation and that he was an associate with **EVANS** because they are neighbors.

A Federal Firearms Licensee check revealed neither **EVANS** nor **McGUINNIE** have ever held and do not currently hold a Federal Firearms License to engage in the business of dealing in firearms.

All aforementioned events and incidents occurred within the city limits of Dallas, Texas, in the Northern District of Texas.

## CONCLUSION

That based on the aforementioned facts herein, I respectfully submit that there is probable cause to believe that on August 27, 2014, Myreon Dae'Mone **EVANS** and Kennard Dewyane **McGUINNIE** knowingly committed a violation 18 U.S.C. §§ 922(a)(1)(A) and 2.

Selwyn DeLoach
Special Agent
U.S. Department of Justice,
Bureau of Alcohol, Tobacco,
Firearms & Explosives

Sworn and subscribed to me this 28th day of August, 2014.

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE